UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DOUGLAS MENDOZA ET AL.     CIVIL ACTION

VERSUS

DOYLE INTERNATIONAL     NO.: 17-00437-BAJ-EWD
LOUISIANA, LLC ET AL.

### RULING AND ORDER

Before the Court is the **Motion to Dismiss (Doc. 18)** filed by the Federal Deposit Insurance Corporation ("FDIC-R"), which is serving as a receiver for Defendant First NBC Bank ("FNBC"). Plaintiffs, Douglas Mendoza and Sugacane's Blues & Barbeque, filed a response. (Doc. 30) For the reasons stated herein, the **Motion to Dismiss (Doc. 18)** is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

Plaintiffs allege that Defendant Jason Doyle ("Doyle") implemented a scheme whereby he enticed victims to invest in purported restaurant enterprises, which were never constructed or opened for business. (Doc. 18-3 at p. 2) Doyle and his associates instead diverted the money for personal use. (*Id.*) Plaintiffs further allege that FNBC participated in Doyle's scam. (*Id.*) FNBC Chief Executive Officer Aston Ryan and Senior Vice-President Beebe allegedly knew that Doyle was defrauding investors and helped facilitate the fraud. (*Id.*) Plaintiffs claim that Ryan and Beebe approved a series of improper commercial loans to Doyle and his various shell business entities totaling over $800,000. (*Id.* at pp. 2-3.)

As part of this scheme, Plaintiffs allege that in 2012 Doyle and his associates, as well as Beebe, convinced Mendoza to invest $300,000 in LCN MOL, LLC ("LCN"). Doyle's company, Doyle International, was already majority shareholder in LCN. (Doc. 1-2 at p. 3; Doc. 18-3 at p. 7). Doyle allegedly promised that the investment would be used to construct and operate a branch of the New Orleans-based restaurant La Crepe Nanou on Bluebonnet Boulevard in Baton Rouge. (*Id.*) The restaurant was never opened. (*Id.*)

Plaintiff further alleges that FNBC moved a portion of the $300,000 from the account that was to fund the restaurant to different accounts under Doyle's name; these accounts were completely unrelated to the restaurant. (Doc. 18-3 at p. 9) Doyle then allegedly spent a portion of these funds on loan and interest payments to FNBC. (*Id.*) Plaintiffs now bring claims against FNBC for fraud – specifically intentional misrepresentation and fraudulent inducement. (Doc. 18-3; Doc. 1-2). Plaintiffs also bring claims for annulment of a contract, intentional and negligent infliction of emotional distress, and conversion. (*Id.*) FNBC seeks to dismiss all claims against it.

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*) 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing *Twombly*, 550 U.S. at 556). Hence, a complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Failure to State a Claim

Defendants assert that Plaintiffs have failed to sufficiently state a claim for each cause of action they assert. The Court addresses each claim in turn.

#### 1. *Fraud*

Fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." LA. CIV. CODE ANN. art. 1953. Plaintiffs accuse FNBC of committing fraud. Specifically, Plaintiffs assert claims for intentional misrepresentation and fraudulent inducement against FNBC. (Doc. 18-2 at p. 3; Doc. 30 at p. 2)

##### a. Intentional Misrepresentation

To state a claim for intentional misrepresentation, a plaintiff must show "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Kadlec Medical Center v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008). To establish a claim

3

concerning silence or inaction by the defendant, a plaintiff also must show that the defendant owed a duty to plaintiff to disclose the information. *Id.* "A duty to disclose does not exist absent special circumstances, such as a fiduciary or confidential relationship between the parties." *Mose v. Keybank Nat. Ass'n*, 464 Fed. Appx. 260, 261 (5th Cir. 2012).

FNBC argues that Plaintiffs have failed to prove that FNBC owed Mendoza a duty to disclose Doyle's financial circumstances and as such cannot bring an intentional misrepresentation claim. (Doc. 18-1 at p. 11) The Court need not reach this question because Plaintiffs' alleged facts may, if proven, support a finding that FNBC actively misrepresented material facts to Mendoza. Plaintiffs claim that Beebe convinced Mendoza to invest $300,000 of his loan proceeds from FNBC into the restaurant, and that Beebe was an "active, knowing participant in the scam." (Doc. 18-3 at p. 5) Taking Plaintiffs' alleged facts as true, as required in a Rule 12(b)(6) motion to dismiss, FNBC, rather than merely acting as a lender, facilitated Doyle's scheme. Further, Plaintiffs properly assert that FNBC had an intent to deceive in that it sought to lead Mendoza to invest in a restaurant that it knew would never be built. (Doc. 19-3 at p. 6). Finally, Plaintiffs sufficiently allege that FNBC caused justifiable reliance and resulting injury. Mendoza relied on Beebe's advice and took out a loan for $300,000, which he lost when he invested the funds in Doyle's venture. (Doc. 18-3 at p. 11) As such, Plaintiffs have satisfactorily alleged that FNBC may be liable for intentional misrepresentation.

### b. Fraudulent Inducement

To state a claim for fraudulent inducement, a plaintiff must show that (1) the defendant engaged in a misrepresentation, suppression, or omission of true information; (2) the defendant intended to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by defendant's fraudulent act substantially influenced the victim's consent to contract. *Envtl., Safety & Health Consulting Services v. Crest Energy Partners, L.P.*, 13-CV-5747, 2015 WL 2452458, at *4 (E.D. La. May 21, 2015) (citing *Shelton v. Standard/700 Associates*, 01-0587 (La. 10/16/01); 798 So. 2d 60, 64.

The Court finds that Plaintiffs properly state a claim for fraudulent inducement. First, Plaintiffs assert that FNBC, through Beebe, "personally facilitated and joined with Doyle to carry out Doyle's scam to swindle $300,000 from Mendoza in January of 2012." (Doc. 18-3 at p. 5). As previously noted, it is alleged that FNBC convinced Mendoza to invest in a restaurant that it knew Doyle would never build. (*Id.* at p. 6) Second, Plaintiffs allege that FNBC had the intent to obtain an unjust advantage in that it, along with Doyle, would be able to convert the funds to its own use. (*Id*). In fact, some of the funds were allegedly used to pay interest and other charges owed to FNBC by Doyle. (*Id.* at p. 11). Finally, the alleged facts support a finding that FNBC's intentional representation substantially influenced Plaintiffs' decision to contract to take out a loan and invest in Doyle's enterprise. Accordingly, Plaintiffs have satisfactorily stated a claim for possible fraudulent inducement.

### 2. Annulment of Contract

Plaintiffs seek to nullify their loan contract with FNBC because of the alleged fraud. (Doc. 1-6 a tp. 4) "A contract is relatively null when a party did not give free consent at the time the contract was made such as when there was fraud in the inducement of the contract." *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 391 (5th Cir. 2012). The Court has already concluded that Plaintiffs have alleged sufficient facts to support a claim for possible fraudulent inducement. Accordingly, Plaintiffs have stated a valid claim for the annulment of their contract.

### 3. Intentional and Negligent Infliction of Emotional Distress

Neither Plaintiffs nor FNBC have briefed the issue of intentional or negligent infliction of emotional distress. However, Plaintiffs raise the claims in their First Amended Petition for Damages. (Doc. 18-3 at p. 1). To assert a claim for intentional infliction of emotional distress, a plaintiff must prove:

> "(1) that the defendant's conduct was so extreme in degree and so outrageous in character that it went beyond all bounds of decency and was utterly intolerable in [a] civilized community; (2) that such conduct caused severe emotional distress; and (3) that the defendant intended, by performing the acts complained of, to inflict severe emotional distress on plaintiff, or that defendant knew that such severe emotional distress would be certain or substantially certain to result from [such] conduct." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994).

Plaintiff have not alleged sufficient facts to support any of these elements. While FNBC's alleged behavior may have constituted fraud, there is nothing in the pleading to indicate that the it "exceeded all bounds of decency." Moreover, Plaintiffs have not cited any facts to support that Mendoza experienced extreme emotional distress or that FNBC intended to inflict such distress. Plaintiffs' claim for intentional infliction of emotional distress against FNBC is dismissed.

A plaintiff may recover for "unintentional or negligent infliction of emotional distress unaccompanied by physical injury where the defendant's negligent conduct is deemed to be outrageous." *Greater New Orleans Fair Housing Action Center, Inc. v. Dopp*, 2014 WL 1652512, at *6 (E.D. La. Apr. 23, 2014). As previously stated, however, Plaintiffs have not alleged sufficient facts to support a finding that FNBC engaged in outrageous conduct. Accordingly, Plaintiffs' claim for negligent infliction of emotional is also dismissed.

### 4. *Conversion*

Plaintiffs also bring a cause of action for conversion. (Doc. 18-3 at p. 1) A cause of action for conversion is based on a defendant's: (1) acquisition of a possession in an unauthorized manner; (2) removal of chattel from one place to another with intent of exercising control over it; (3) unauthorized transfer of possession of chattel; (4) withholding possession from owner; (5) alteration or destruction of chattel; (6) improper use of the chattel; or (7) assertion of ownership over chattel. *In re Discount Cigarette, Cigars, Etc. Inc.*, 399 B.R. 605, 616 (M.D. La. Jan. 15, 20019) Conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights. *Id.*

7

The Court finds that Plaintiffs have not alleged sufficient facts to support a finding that FNBC engaged in conversion. FNBC transferred the possession of its funds to Plaintiffs by loaning Mendoza $300,000. (Doc. 18-3 at p. 5). Mendoza in turn authorized the transfer of these funds to Doyle. (*Id.* at p. 7). Although Plaintiffs allege that Beebe then transferred $265,765 of Mendoza's investment into accounts unrelated to the restaurant, this was in response to Doyle's instructions, who had rightful possession of the funds at that point. (*Id.* at p. 8) At no time did FNBC transfer funds without Mendoza's or Doyle's authorization. Accordingly, Plaintiffs' conversion claim against FNBC is dismissed.

### 5. *Breach of Fiduciary Duty*

The Court finds that Plaintiffs have not established that a fiduciary relationship existed between Mendoza and FNBC. Louisiana law clearly states that "no financial institution or officer or employee thereof shall be deemed or implied to be acting as fiduciary, or have a fiduciary obligation or responsibility to its customers . . . unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary." La. R.S. 6:1124. Nothing in the Complaint indicates that such a written agreement existed between FNBC and Mendoza. Accordingly, any actions Plaintiffs assert for breach of fiduciary duty are dismissed.

B. **Prescription**

Defendant alleges that Plaintiffs' claims are prescribed. The Court has analyzed the prescription period for Plaintiffs' remaining claims of intentional misrepresentation, fraudulent inducement, and annulment of contract.

1. *Intentional Misrepresentation and Fraudulent Inducement*

Tort claims under Louisiana law are generally subject to a prescription period of one year. La. Civ. Code art. 3492. The prescription period "commences to run from the day injury or damage is sustained." *Id.* Plaintiffs assert that their fraud claims are subject to a ten-year prescription period, which applies to deliberate actions, such as fraud, misrepresentation, or conversion, of a fiduciary. (Doc. 30 at p. 13). As previously noted, Plaintiff has failed to establish that fiduciary relationship existed between FNBC and Mendoza. Accordingly, Plaintiffs' intentional misrepresentation and fraudulent inducement claims are subject to the one-year prescription period for tortious actions.

Nevertheless, the Court finds that the doctrine of *contra non valentem* precludes dismissal of Plaintiffs' intentional misrepresentation and fraudulent inducement claims. *Contra non valentem* prevents the running of prescription where the "cause of action is not reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Miles v. MEMC Pasadena, Inc.*, No. 08-4436, 2009 WL 1323014, at *3 (E.D. La. May 8, 2009). However, prescription still commences when a plaintiff obtains "actual or constructive knowledge" of facts indicating to a reasonable person that he or she is the victim of a tort. *In re: Xarelto*

*(Rivaroxaban) Products Liability* Litigation, No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct., 10, 2017). Constructive knowledge is whatever notice is enough to "excite attention and put the injured party on guard and call for inquiry." *Id.*

The Court finds that Plaintiffs have alleged sufficient facts to support a finding that *contra non valentem* tolled Plaintiffs' prescription period. Defendants argue that prescription began to run when NBC Vice President Beebe deposited Mendoza's check in the Doyle International account on January 20, 2012. (Doc. 18-3 at p. 8; Doc. 8 at p. 14) However, given that Plaintiffs invested in the construction of a restaurant, it would be unreasonable to assume that Plaintiffs had constructive knowledge of the alleged fraud as soon as Mendoza tendered the funds. A reasonable person would expect construction to take time. Plaintiffs claim that Mendoza became increasingly frustrated between 2012 and 2013 with Doyle's continued failure to complete the restaurant. (Doc. 18-3 at p. 10). However, FNBC allegedly never provided Mendoza with any insight or explanation as to how FNBC had disbursed the $300,000 loans proceeds, and Mendoza received repeated assurances that the funds would be used in the construction of the restaurant. (Doc. 18-2 at p. 4) Taking these facts in a light most favorable to Plaintiffs, the Court concludes that Plaintiffs may not have had cause to know that a fraud was being perpetrated until late 2013, much less that FNBC was allegedly involved in the fraud. The Court must therefore allow discovery to proceed on the issue of prescription. Accordingly, FNBC is not entitled to the dismissal of Plaintiffs claims for intentional misrepresentation and fraudulent inducement at this time.

### 2. *Annulment of Contract*

The prescription period for an "action for annulment of a relatively null contract must be brought within five years from the time the ground for nullity . . . was discovered, as in the case of error or fraud." LA. CIV. CODE ANN. 2032. Plaintiffs allege that FNBC helped Doyle swindle them out of $300,000 in early 2012. (Doc. 18-3 at p. 8) Plaintiffs first filed this action in October 2014 (Doc. 1-2 at p. 2) Thus, regardless of when Plaintiffs discovered the alleged fraud, Plaintiffs filed their action well within the prescriptive period of five years. As such, Defendant is not entitled to dismissal of Plaintiffs' claims.

### C. Vicarious Liability

Finally, FNBC asserts that if the Court does find that Plaintiff has sufficiently alleged tortious claims based on Beebe's actions, FNBC is still not liable because Beebe was acting outside the course and scope of his employment. Louisiana courts have identified four factors to be considered in determining vicarious liability: "(1) whether the tortious act was primarily employment rooted; (2) whether the tortious act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." *Nagle v. Gusman*, 62 F. Supp.3d 609, 626 (E.D. La. Nov. 18, 2014).

The Court concludes that Plaintiffs allege sufficient facts to support a finding that FNBC may be held vicariously liable for Beebe's actions. FNBC asserts that its role was limited only to the act of assessing Plaintiffs' ability to be approved for a loan. As such, encouraging Mendoza to invest in Doyle's venture was not within the

11

scope of Beebe's FNBC duties. (Doc. 32 at p. 5) However, Plaintiffs allege that FNBC made improper business loans to Doyle beginning in 2010 – two years before Mendoza allegedly invested in Doyle's enterprise. (Doc. 18-3 at p. 2) Plaintiffs further allege that FNBC began facilitating Doyle's restaurant investment scams in March of 2011. (*Id.*) These facts suggest that FNBC's role may have expanded well beyond merely assessing a potential debtors' ability to repay loans and may have extended to enabling Doyle's scheme. As such Plaintiffs have sufficiently alleged Beebe's actions were employment rooted and incidental to the performance of his duties at FNBC. Moreover, it appears that at least some of Beebe's actions, such as approving the loan itself, may have occurred on FNBC's premises during Beebe's hours of employment. *Nagle v. Gusman*, 62 F. Supp.3d 609, 626 (E.D. La. Nov. 18, 2014). Accordingly, FNBC is not entitled to dismissal of Plaintiffs claims based on Plaintiffs failure to allege vicarious liability.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss (Doc. 18)** is **GRANTED IN PART** and **DENIED IN PART**.

Baton Rouge, Louisiana, this 18th day of March, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**